## Case No. 10,729.

### PARKER v. The CALLIOPE.

[2 Pet. Adm. 272.] [1]

District Court, D. Pennsylvania. 1806.

SEAMEN'S WAGES—PRIVILEGES SUPPLEMENTARY TO THE SHIPPING ARTICLES.

1. Embezzlement charged on a cook for selling the ship's slush. Enquiry into the custom of the port, relative to this article. No custom of the port to justify the claim by the ship's cook to the slush. Wages decreed.

[2. Cited in The Warrington, Case No. 17,208, to the point that a mariner may recover the value of privileges granted him supplementary to the shipping articles, and not written in them, the act of congress of July 20, 1790 (1 Stat. 131), not requiring their insertion.]

The respondent [Florimond J. Dusar], the owner [of the ship Calliope], allowed the claim of wages, but made a charge against the libellant for the amount of a quantity of ship's slush, valued at seventy-eight dollars and upwards. which he alleged the cook had embezzled, sold and converted the proceeds to his own use. The libellant [Thomas Parker] proved by a witness, who swore that he was present when the agreement was made by the captain, that the cook should have the slush, in addition to pecuniary wages. The cook desired this to be entered on the articles, but the captain said his word was sufficient, and nothing was inserted but the wages to be paid in money; and the witness also asserted, that the owner assented. The same witness also declared, that the captain, after the ship's return, acknowledged the agreement with the cook, for the perquisite claimed. The clerks in the owner's compting house swore that no such conversation took place in their hearing, though they were present in the compting-house, at the time of the alleged transaction; and one of them was active in forwarding the business of shipping the men. A witness, who had been a mariner on board, on the ship's return from the voy-

1 [Reported by Richard Peters, Jr., Esq.]

age in question swore that the captain at Newcastle, on the Delaware, had given express permission to the cook to sell the slush, alleging, that it was offensive, and the sooner it was taken away the better. The same witness proves that the cook on the voyage, had mentioned, in the presence of or so near to the captain, that he must have heard him, his right to the slush. He also proves, that the cook was for some time sick, and the steward performed his duty, and was permitted to take and sell the slush, collected in that period. No direct testimony, to discredit the libellant's witnesses, was produced; but objections to the credit of the first witness, were founded on the improbability that the agreement should have been made, and the clerks not hear it, in a small apartment. No imputation was attempted on the character or credit of the mariner testifying to the transaction at Newcastle, save that the general incorrectness of seamen was hinted at.

An importance was given to this cause, by supposing that a general custom of the port for allowing the perquisite herein claimed to all ship's cooks was endeavoured to be established. A number of depositions were filed and read, disproving this custom, as a privilege to be claimed of right, though often allowed to cooks from motives of generosity. The danger of the permission was shewn, as it gave opportunities to fraud, by encreasing the quantity of slush with ship's provisions. at the hazard, in long voyages, of producing a necessity for short allowance to the crew. A point was made that no parol testimony could be received, as the article in writing expressed no such perquisite as part of the agreement.

BY THE COURT. I desire that it may be understood, that I do not ground my decision upon any general custom, by which ship's cooks can legally claim the perquisite to which the libellant alleges his right. Several years ago, I investigated an alleged custom, that stewards should, of right. have the remnants of cabin stores after the voyage ended; and decreed they had no such right. There is no such general custom, as that of cooks having, of right, the slush; and, therefore, in this case, it can only be claimed under the special agreement. It appears to me, that the shipping articles contemplated by the act of congress, do not necessarily require these supplementary grants of additional benefits to be inserted. The privileges to mates, &c. are never specifically written in the articles; which seem only calculated for pecuniary agreements. Therefore, parol testimony may be given of such extraneous matter.

My decree will be formed solely on the point of the alleged embezzlement. I should have hesitated to have given perfect credence to the first witness, who swears to the agreement in the owner's compting-house, were his testimony not corroborated by the mariner

who swears to the captain's license, confirmatory and executory of the agreement originally alleged. The captain was the agent of the owner; and if he has made an agreement, or given privileges contrary to the owner's interest, or instructions, he is responsible. The cook cannot be charged with embezzling an article carried away and sold by the express license of the master. Here are two affirmative witnesses, swearing expressly to the point of an agreement, and a posterior ratification and license. These witnesses I am legally bound to admit in proof. I cannot reject them as unworthy of credit, from any general prejudice, which it is my duty not to indulge.

Wages decreed to the libellant, amounting to one hundred and fifty dollars, with costs.